# In the United States Court of Federal Claims

No. 18-312C
(Filed: January 9, 2019)

```
* * * * * * * * * * * * * * * * * * * * * * * * * * *
                                            *
JOSE A. PEREZ,                              *
                                            *
            Plaintiff,                      *
                                            *
      v.                                    *
                                            *
THE UNITED STATES,                          *
                                            *
            Defendant.                      *
                                            *
* * * * * * * * * * * * * * * * * * * * * * * * * * *
```

---

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

**WILLIAMS**, Senior Judge.

Plaintiff pro se Jose Perez alleges that the United States Department of Education ("Education") illegally exacted $14,455.58 from him by offsetting this amount from his Social Security payments and applying it toward six unpaid student loans. Plaintiff claims that the loans were repaid "on or about 2004-2005," and seeks a refund of the offset and an injunction to cease further collection attempts.

This matter comes before the Court on Defendant's motion for summary judgment. Because there are no genuine issues of material fact and Defendant is entitled to judgment as a matter of law, Defendant's motion for summary judgment is granted.

## Background[1]

Plaintiff took out 23 loans under various financial assistance programs authorized by Title IV of the Higher Education Act of 1965. Twelve of Plaintiff's loans were cancelled, three were made pursuant to the Perkins Loan Program, which has now ended, and the remaining eight were made pursuant to the Federal Family Education Loan Program ("FFELP"). Scaniffe Decl. ¶ 24. FFELP loans are made by private institutions but are guaranteed by state agencies or non-profit organizations, and are reinsured and often subsidized by Education. Id. at ¶ 10. Plaintiff obtained the loans in order to pursue studies at Jackson Memorial Hospital School of Nursing and Hahnemann University, which is now part of Drexel University. Plaintiff attended Hahnemann University from 1991-94, and earned a Bachelor of Science in Hahnemann's physician assistant program. DA 214.

The six FFELP loans at issue are now held by Education. Scaniffe Decl. ¶¶ 24-25. Under the Federal Family Education Loan Program, loans made by a bank, institute of higher education, or Education itself acting as a lender are guaranteed by either state agencies or non-profit organizations and are reinsured by Education. Id. at ¶ 10. When a borrower defaults, the guaranty agency "pays on the claim to the holder of the loan, which may be either the original lender or another eligible financial institution to whom the loan was assigned, and takes assignment of the loan." Id. at ¶ 11. After the guaranty agency pays a default claim, it files a claim with Education, which reimburses the guaranty agency "a percentage of the losses the guaranty agency incurs in honoring default claims on qualifying loans. After the guarantor has been reimbursed, it must try to collect the debt from the defaulter . . . ." Id. at ¶ 12. The guaranty agency "must remit to Education a corresponding percentage of any amounts it recovers directly from the defaulter," and if the guaranty agency "obtains no payment from the debtor for a significant period, Education

---

[1]     This background is derived from Plaintiff's amended complaint, and the appendix attached to Defendant's motion for summary judgment. "DA" refers to Defendant's appendix. Defendant's appendix includes the declaration of S. Dawn Scaniffe, an attorney in the Department of Education's Division of Postsecondary Education, Office of the General Counsel. Attached to Ms. Scaniffe's declaration are: Plaintiff's aggregate loan history from the National Student Loan Data System ("NSLDS"); the NSLDS loan detail for each of Plaintiff's individual loans; the promissory note for Loan 23; two checks reflecting disbursements for Loan 23; Plaintiff's debt detail from the Debt Management and Collection System ("DMCS") database; promissory notes for Loans 22, 21, 10, 9, 3, 2, and 1; a compilation of Plaintiff's promissory note signatures; DMCS records of payment transactions and collection actions and communications between Plaintiff and Education; the disclosure statements for Loans 23, 21, 10, 9, 3, 2, and 1; the collection agency history, notice history, and payment history of Plaintiff's account from DMCS; Plaintiff's letter to Education disputing Education's referral of Plaintiff's debt to Treasury Offset Program ("TOP"); the TOP hearing decision; Plaintiff's 2005 complaint in the United States District Court for the Southern District of Indiana against United Student Aid Funds ("USAF"); the District Court's 2007 judgment in favor of USAF for $42, 212.16; USAF's brief in support of summary judgment; the affirmance by the United States Court of Appeals for the Seventh Circuit of the district court's decision; Plaintiff's transcript from Drexel University; and promissory notes for Plaintiff's Perkins Loans.

may require the guarantor to assign the loan to Education." Id. Upon assignment, Education begins its own collection efforts. Id. at ¶ 13.

Plaintiff's loan history for these six loans, identified by their National Student Loan Data System loan numbers, is as follows:

- On June 30, 1989, Plaintiff signed a promissory note for Loan 23, a Subsidized Stafford Loan in the amount of $2,625 for studies at Jackson Memorial Hospital School of Nursing. The initial lender was CenTrust Savings Bank, and the guaranty agency was the Florida Department of Education Office of Student Financial Assistance. On October 15, 1994, Plaintiff defaulted on this loan, and on June 8, 1995, the Florida Department of Education Office of Student Financial Assistance paid the default claim. On August 21, 1995, Education paid the guaranty agency, which continued to hold the loan and continued to attempt to collect it. On September 7, 2004, Education accepted assignment of the loan.

- On June 2, 1991, Plaintiff signed a promissory note for Loan 21, a Supplemental Loan for Students in the amount of $4,000 for studies at Hahnemann University. The initial lender was Citibank, and the guaranty agency was United Student Aid Funds ("USAF"). USAF is a Delaware corporation in the business of guaranteeing student loans. DA 214. On January 30, 1996, Plaintiff defaulted on this loan, and on January 31, 1996, USAF paid the default claim. On March 15, 1996, Education paid the guaranty agency, which continued to hold the loan and continued to attempt to collect on it. On November 29, 2010, Education accepted assignment of the loan.

- On February 16, 1993, Plaintiff signed a promissory note for Loan 9, a Supplemental Loan for Students in the amount of $4,000 for studies at Hahnemann University. The initial lender was Citibank, and the guaranty agency was USAF. On January 30, 1996, Plaintiff defaulted on this loan, and on January 31, 1996, USAF paid the default claim. On March 15, 1996, Education paid the guaranty agency, which continued to hold the loan and continued to attempt to collect it. On November 29, 2010, Education accepted assignment of the loan.

- On November 13, 1993, Plaintiff signed a promissory note for Loan 3, a Supplemental Loan for Students in the amount of $4,000 for studies at Hahnemann University. The initial lender was Citibank, and the guaranty agency was USAF. On January 30, 1996, Plaintiff defaulted on this loan, and on January 31, 1996, USAF paid the default claim. On March 15, 1996, Education paid the guaranty agency, which continued to hold the loan and continued to attempt to collect it. On November 29, 2010, Education accepted assignment of the loan.

- On March 15, 1994, Plaintiff signed a promissory note for Loan 2, a Supplemental Loan for Students in the amount of $5,500 for studies at Hahnemann University. The initial lender was Citibank, and the guaranty agency was USAF. On January 30, 1996, Plaintiff defaulted on this loan, and on January 31, 1996, USAF paid the default claim. On March 15, 1996, Education paid the guaranty agency, which

continued to hold the loan and continued to attempt to collect it. On November 29, 2010, Education accepted assignment of the loan.

- On March 15, 1994, Plaintiff signed a promissory note for Loan 1, a Supplemental Loan for Students in the amount of $1,000 for studies at Hahnemann University. The initial lender was Citibank, and the guaranty agency was USAF. On January 30, 1996, Plaintiff defaulted on this loan, and on January 31, 1996, USAF paid the default claim. On March 15, 1996, Education paid the guaranty agency, which continued to hold the loan and continued to attempt to collect it. On November 29, 2010, Education accepted assignment of the loan.

Scaniffe Decl. ¶ 25. The initial amount disbursed to Plaintiff under these six loans was $21,125. The loans were declared in default as a result of Plaintiff making no voluntary payments, and, as of May 1, 2018, the total amount Plaintiff owed was $41,921.21. Id. at ¶¶ 36, 39, 54.

Once the loans were declared in default, Education placed the loans in the Treasury Offset Program ("TOP"), which is a centralized debt collection program administered by the Treasury Department for the purpose of assisting federal agencies in the collection of delinquent debts owed to the Government. Id. at ¶ 17. Education has collected 47 offsets from Plaintiff via TOP, beginning on May 29, 2009, for a total of $14,455.58, which has been credited toward Plaintiff's six defaulted loans.[2] Id. at ¶¶ 40-41. Education also collected $355.52 by garnishing Plaintiff's wages on February 13, 2007. Id. at ¶¶ 40-41.

Prior to referring Plaintiff's defaulted loans to TOP for collection, Education sent Plaintiff three letters, dated August 18, 2005, August 11, 2006, and July 3, 2008, notifying Plaintiff of Education's intent to begin collection via TOP. Id. at ¶ 44. Education began collection under TOP on May 29, 2009. Id. at ¶ 41. After TOP offsets had begun, Education sent Plaintiff an additional letter on June 3, 2011, notifying Plaintiff of Education's collection efforts. Plaintiff did not respond to these notices until October 27, 2017, when he sent Education a letter objecting to the offsets being taken from his Social Security payments, claiming that he never received notice of the debt or collection effort, that he repaid the debt in 2004-05, and requesting that Education discontinue taking offsets, refund offsets collected, and grant Plaintiff a hearing. Am. Compl. ¶ 9; DA 187-89. On January 18, 2018, Education responded to Plaintiff, stating that its records showed letters were sent to Plaintiff on multiple occasions, and that the Department's records showed his debt existed. DA 191-92. The letter also stated that an in-person hearing was not required as Plaintiff did not provide sufficient information as to why his objection could not be resolved through a review of documentary evidence. DA 191.

On April 6, 2005, Plaintiff filed a complaint against USAF, the guaranty agency for five of the six loans at issue here, in the United States District Court for the Southern District of Indiana, alleging that USAF failed to validate the debt and failed to afford Plaintiff a hearing prior to garnishing his wages, and seeking a permanent injunction against further collection efforts and a refund of all funds previously collected. DA 196-99. Five loans at issue in Plaintiff's District

---

[2]     The last TOP offset was on April 25, 2018. Upon notification of this lawsuit, Education stopped the TOP offsets and will not resume them until the conclusion of this matter. Scaniffe Decl. ¶ 49.

Court case are also at issue here. On January 22, 2007, the District Court dismissed Plaintiff's complaint with prejudice and entered judgment in favor of USAF in the amount of $42,212.16 plus interest. DA 210. On January 29, 2007, Plaintiff moved to set aside the District Court's judgment. The District Court denied Plaintiff's motion on January 31, 2007. On February 16, 2007, the District Court denied a second, nearly identical motion, which it construed as a Rule 60(b) motion, Relief from a Judgment or Order, and on September 27, 2007, the United States Court of Appeals for the Seventh Circuit affirmed the District Court's February 16 decision.

On June 27, 2018, Plaintiff filed his amended complaint in this Court. Plaintiff alleges that the offsets from his Social Security payments pursuant to TOP are an illegal exaction, a Fifth Amendment Taking, and violate his due process rights.

## Discussion

### Summary Judgment Standard

Summary judgment is appropriate where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." RCFC 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). A genuine dispute is one that "may reasonably be resolved in favor of either party." Liberty Lobby, 477 U.S. at 250. A fact is material if it "might affect the outcome of the suit." Id. at 248. The moving party bears the burden of establishing the absence of any material fact, and any doubt over factual disputes will be resolved in favor of the nonmoving party. Mingus Constructors, Inc. v. United States, 812 F.2d 1387, 1390 (Fed. Cir. 1987). Once this burden is met, the onus shifts to the nonmovant to present evidence from which a finder of fact might rule in his favor. If he does so, there is a genuine issue of fact that requires a trial. Liberty Lobby, 477 U.S. at 257.

### Unconstested Evidence Establishes Plaintiff's Debt to the Government

In order to succeed on a motion for summary judgment, Defendant must show that Plaintiff's defaulted loans were properly assigned to Education and that Education followed the proper procedures to collect the debt. See Kipple v. United States, 105 Fed. Cl. 651, 653-57 (2012). Defendant provided the declaration of S. Dawn Scaniffe, an attorney at Education familiar with the agency's electronic records databases, in particular its records on defaulted loans. Scaniffe Decl. ¶¶ 1-7. Ms. Scaniffe testified that her declaration was based on her review of Plaintiff's records as well as her knowledge of TOP. Id. at ¶ 8. Attached to Ms. Scaniffe's declaration are 241 pages of exhibits detailing Plaintiff's loan history, as well as correspondence between Plaintiff and Education, Plaintiff and USAF, and Plaintiff's previous lawsuit against USAF. DA 1-241. Defendant has established that valid loans were made to Plaintiff, that Plaintiff failed to repay them, that Education guaranteed these loans and paid the amounts Plaintiff owed, and that Plaintiff now owes Education these amounts plus interest as allowed by law. See Kipple, 105 Fed. Cl. at 654-55 (finding no genuine issue of material fact as whether or not assignment of the plaintiff's loans to Education occurred where Defendant provided Education employee's declaration establishing how Education acquired the loan from the plaintiff's university); see also Wagstaff v. United States, 111 Fed. Cl. 754, 764 (2013) (finding complaint could not survive summary judgment where the plaintiff was unable to produce any evidence showing that the promissory notes were invalid or that the assignment was improper).

Plaintiff has provided no evidence supporting his claims that the debt is invalid or that the debt was paid. All six of the loans at issue are in default. Although Plaintiff alleges that the loans at issue were repaid in 2004-2005, Plaintiff has provided no evidence of this claimed repayment, and Education's records do not reflect any voluntary payments ever being made by Plaintiff. Id. at ¶ 39. Plaintiff has not identified any genuine issues of material fact that prevent entry of summary judgment on behalf of the Government.

## Plaintiff Has Failed to Establish an Illegal Exaction or a Taking

Plaintiff alleges that the TOP offsets taken from his Social Security payments are an illegal exaction and seeks the return of all money taken pursuant to TOP. In order to state a claim for an illegal exaction, a plaintiff must allege that he "has paid money over to the Government, directly or in effect, and [seek] return of all or part of that sum that was improperly paid, exacted, or taken from the claimant in contravention of the Constitution, a statute, or a regulation." Aerolineas Argentinas v. United States, 77 F.3d 1564, 1572-73 (Fed. Cir. 1996) (internal citation and quotation marks omitted); see also Norman v. United States, 429 F.3d 1081, 1095 (Fed. Cir. 2005); Clapp v. United States, 127 Ct. Cl. 505, 512-13 (1954) (finding that an illegal exaction occurs when "the Government has the citizen's money in its pocket, and pleads the illegal acts of its officials as an excuse for keeping it there"). Although Plaintiff has stated a claim for illegal exaction, alleging that Education, via the TOP offsets, has taken money from him in violation of 31 U.S.C. § 3716, the uncontroverted evidence establishes that Plaintiff owed the Government the amounts offset. Nor can Plaintiff establish a Fifth Amendment taking claim, as Plaintiff does not concede that the Government has acted legitimately in its collection action. See Zainulabeddin v. United States, 138 Fed. Cl. 492, 506 (2018) ("In asserting a takings claim, a plaintiff must concede the legitimacy of the government action that effected the taking."). Section 3716 of Title 31, entitled Administrative offset, allows a Government agency to collect amounts owed via administrative offset, even from payments due under the Social Security Act. 31 U.S.C. § 3716 (2012).[3]

In addition, Plaintiff seeks an injunction against further collection attempts, but this Court lacks the authority to grant this type of equitable relief in the circumstances here. This Court may only grant equitable relief in certain tax cases, bid protests, and in situations where such relief is an "incident of and collateral to" a monetary judgment. 28 U.S.C. § 1491(a)(2); Martinez v. United States, 333 F.3d 1295, 1303 (Fed. Cir. 2003). As none of these conditions are met, this Court cannot grant Plaintiff's requested injunction.

---

[3]     Plaintiff also alleges a violation of his Fifth Amendment Due Process rights, but this Court lacks jurisdiction over this claim, as the Due Process clause is not money-mandating. LeBlanc v. United States, 50 F.3d 1025, 1028 (Fed. Cir. 1995).

## Conclusion

Defendant's motion for summary judgment is **GRANTED**. Plaintiff's motion to conduct discovery, his motions to strike Defendant's affirmative defenses, and his motion for summary judgment are **DENIED**. The Clerk is directed to dismiss this action.

MARY ELLEN COSTER WILLIAMS
Senior Judge